UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

ISSAC DECRAIS HARRIS #447304,

        Plaintiff,               Case No. 2:17-cv-00141

v.                                    HON. GORDON J. QUIST

C. HORTON, et al.,

        Defendants.
_____/

## REPORT AND RECOMMENDATION

      This is a civil rights action brought by state prisoner Issac Decrais Harris pursuant to 42 U.S.C. § 1983. Plaintiff alleges that while he was confined in the Chippewa Correctional Facility, Defendants Acting Warden C. Horton, Deputy Warden D. Isard, Acting Deputy Warden R. Batho, Acting Deputy Warden J. Miller, RUM D. LaLonde, Acting RUM K. Dunton, and Sergeant S. Davidsons failed to protect him from inmate gang members in violation of his Eighth Amendment rights. In addition, Plaintiff asserts that Defendants LaLonde and Isard retaliated against him by reclassifying him to security level IV.

      On January 19, 2017, Plaintiff requested protection and was placed in segregation. Plaintiff was interviewed the next day by SCC members Miller and LaLonde, who determined that there was no evidence of a threat against Plaintiff. Plaintiff refused placement into the general population. Defendant Miller threatened Plaintiff with a DDO ticket if he refused an order to return to general population. Plaintiff states that he had no choice but to return to general population. Plaintiff states that he was released to the worst of general population, where all the

security threat gang members were housed. Plaintiff alleges that on March 20, 2017, he was stabbed while he was going to chow hall.

Plaintiff alleges that he reported the incident to Davidsons and Anderson. Anderson's investigation concluded that Plaintiff had not been stabbed. Plaintiff asserts that he was again denied protection but that he was placed in segregation after he refused to return to his unit. Plaintiff filed a grievance and on April 3, 2017, Batho and Dunton conducted an SCC interview. Plaintiff could not identify the individual who had stabbed him and was told to return to general population. On April 7, 2017, Plaintiff received a DDO misconduct ticket when he refused to go to general population. Plaintiff received another DDO misconduct ticket for refusing to return to general population on April 23, 2017. When Plaintiff was interviewed by SCC members Isard and D. LaLonde on May 1, 2017, he explained that he had been stabbed by a member of the same gang connected to his earlier assault at the Alger Correctional Facility in 2012. Plaintiff could not identify the individual who assaulted him and Defendants concluded that Plaintiff failed to provide information that could support his request for protection. Plaintiff received another DDO misconduct ticket after he refused to go to general population on May 8, 2017. Defendants filed a partial motion for summary judgment (ECF No. 19) on the ground that Plaintiff failed to exhaust his available administrative remedies. Plaintiff filed a response (ECF No. 20).

Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); *Kocak v. Comty. Health Partners of Ohio, Inc.*, 400 F.3d 466, 468 (6th Cir. 2005); *Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir. 2005). The standard for determining whether summary judgment is appropriate is "whether the evidence presents a

sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *State Farm Fire & Cas. Co. v. McGowan*, 421 F.3d 433, 436 (6th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)); *see also Tucker v. Union of Needletrades Indus. & Textile Employees*, 407 F.3d 784, 787 (6th Cir. 2005). The court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing the motion. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Twin City Fire Ins. Co. v. Adkins*, 400 F.3d 293, 296 (6th Cir. 2005).

A prisoner's failure to exhaust his administrative remedies is an affirmative defense, which Defendants have the burden to plead and prove. *Jones v. Bock*, 549 U.S. 199, 212-216 (2007). A moving party without the burden of proof need show only that the opponent cannot sustain his burden at trial. *See Morris v. Oldham County Fiscal Court*, 201 F.3d 784, 787 (6th Cir. 2000); *see also Minadeo v. ICI Paints*, 398 F.3d 751, 761 (6th Cir. 2005). A moving party with the burden of proof faces a "substantially higher hurdle." *Arnett v. Myers*, 281 F.3d 552, 561 (6th Cir. 2002); *Cockrel v. Shelby County Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001). "Where the moving party has the burden -- the plaintiff on a claim for relief or the defendant on an affirmative defense -- his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986) (quoting W. SCHWARZER, *Summary Judgment Under the Federal Rules: Defining Genuine Issues of Material Fact*, 99 F.R.D. 465, 487-88 (1984)). The United States Court of Appeals for the Sixth Circuit repeatedly has emphasized that the party with the burden of proof "must show the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Arnett*, 281 F.3d at 561 (quoting

11 JAMES WILLIAM MOORE, ET AL., MOORE'S FEDERAL PRACTICE § 56.13[1], at 56-138 (3d ed. 2000); *Cockrel*, 270 F.2d at 1056 (same). Accordingly, summary judgment in favor of the party with the burden of persuasion "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

Pursuant to the applicable portion of the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a), a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must exhaust his available administrative remedies. *See Porter v. Nussle*, 534 U.S. 516, 532 (2002); *Booth v. Churner*, 532 U.S. 731, 733 (2001). A prisoner must first exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process. *See Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741; *Knuckles El v. Toombs*, 215 F.3d 640, 642 (6th Cir. 2000); *Freeman v. Francis*, 196 F.3d 641, 643 (6th Cir. 1999). In order to properly exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules. *Jones v. Bock*, 549 U.S. 199, 218-19 (2007); *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006). "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.'" *Jones*, 549 U.S. at 218-19. In rare circumstances, the grievance process will be considered unavailable where officers are unable or consistently unwilling to provide relief, where the exhaustion procedures may provide relief, but no ordinary prisoner can navigate it, or "where prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Ross v. Blake*, 136 S.Ct. 1850, 1859-1860 (2016).

MDOC Policy Directive 03.02.130 (effective July 9, 2007), sets forth the applicable grievance procedures for prisoners in MDOC custody at the time relevant to this complaint.

Inmates must first attempt to resolve a problem orally within two business days of becoming aware of the grievable issue, unless prevented by circumstances beyond his or her control. *Id.* at ¶ P. If oral resolution is unsuccessful, the inmate may proceed to Step I of the grievance process and submit a completed grievance form within five business days of the attempted oral resolution. *Id.* at ¶¶ P, V. The inmate submits the grievance to a designated grievance coordinator, who assigns it to a respondent. *Id.* at ¶ V. The Policy Directive also provides the following directions for completing grievance forms: "The issues should be stated briefly but concisely. Information provided is to be limited to the facts involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places and names of all those involved in the issue being grieved are to be included." *Id.* at ¶ R (emphasis in original). "But when prison officials decline to enforce their own procedural rules and instead consider a non-exhausted claim on its merits, a prisoner's failure to comply with those rules does not create a procedural bar to that prisoner's subsequent federal lawsuit." *Hardy v. Agee*, No. 16-2005, at 3 (6th Cir. Mar. 5, 2018) (unpublished) citing *Reed-Bey v. Pramstaller*, 603 F.3d 322, 325 (6th Cir. 2010). The Sixth Circuit has explained:

> [A] prisoner ordinarily does not comply with MDOCPD 130—and therefore does not exhaust his administrative remedies under the PLRA—when he does not specify the names of each person from whom he seeks relief. *See Reed-Bey v. Pramstaller*, 603 F.3d 322, 324-25 (6th Cir. 2010) ("Requiring inmates to exhaust prison remedies in the manner the State provides—by, say, identifying *all* relevant defendants—not only furthers [the PLRA's] objectives, but it also prevents inmates from undermining these goals by intentionally defaulting their claims at each step of the grievance process, prompting unnecessary and wasteful federal litigation process."). An exception to this rule is that prison officials waive any procedural irregularities in a grievance when they nonetheless address the grievance on the merits. *See id.* at 325. We have also explained that the purpose of the PLRA's exhaustion requirement "is to allow prison officials 'a fair opportunity' to address grievances on the merits to correct prison errors that can and should be corrected to create an administrative record for those disputes that eventually end up in court." *Id.* at 324.

5

*Mattox v. Edelman*, 851 F.3d 583, 590-591 (6th Cir. 2017).[1]

If the inmate is dissatisfied with the Step I response, or does not receive a timely response, he may appeal to Step II by obtaining an appeal form within ten business days of the response, or if no response was received, within ten days after the response was due. *Id.* at ¶¶ T, BB. The respondent at Step II is designated by the policy, *e.g.,* the regional health administrator for a medical care grievances. *Id.* at ¶ DD. If the inmate is still dissatisfied with the Step II response, or does not receive a timely Step II response, he may appeal to Step III using the same appeal form. *Id.* at ¶¶ T, FF. The Step III form shall be sent within ten business days after receiving the Step II response, or if no Step II response was received, within ten business days after the date the Step II response was due. *Id.* at ¶¶ T, FF. The Grievance and Appeals Section is the respondent for Step III grievances on behalf of the MDOC director. *Id.* at ¶ GG. "The total grievance process from the point of filing a Step I grievance to providing a Step III response shall generally be completed within 120 calendar days unless an extension has been approved . . . ." *Id.* at ¶ S.

In addition, the grievance policy provides that, where the grievance alleges conduct that falls under the jurisdiction of the Internal Affairs Division pursuant to PD 01.01.140, the prisoner may file his Step I grievance directly with the inspector of the institution in which the prisoner is housed, instead of with the grievance coordinator, as set forth in ¶ V of PD 03.02.130.

---

[1] In *Holloway v. Mclaren*, No. 15-2184 (6th Cir., April 7, 2016) (unpublished), the Sixth Circuit concluded that where a plaintiff fails to name each defendant in his grievance, the un-named defendants may not be dismissed for failure to exhaust grievance remedies if the MDOC did not reject the grievance under the policy requiring a grievant to name each individual involved. The Sixth Circuit stated: "Because MDOC officials addressed the merits of Holloway's grievance at each step and did not enforce any procedural requirements, Holloway's failure to identify the defendants named in this lawsuit and to specify any wrongdoing by them in his grievances cannot provide the basis for dismissal of his complaint for lack of exhaustion." *Id.* at 3. In *Mattox*, the Sixth Circuit held that a prisoner may only exhaust a claim "where he notifies the relevant prison . . . staff" regarding the specific factual claim "giving the prison staff a fair chance to remedy a prisoner's complaints."  slip op. at 16. For example, grieving a doctor about his failure to give cardiac catheterization failed to grieve the claim that the doctor erred by not prescribing Ranexa.

*Id.* at ¶Q.  In such instances, the grievance must be filed within the time limits prescribed for filing grievances at Step I.  *Id.*  Regardless of whether the grievance is filed with grievance coordinator or the inspector, the grievance will be referred to the Internal Affairs Division for review and will be investigated in accordance with PD 01.01.140.  The prisoner will be promptly notified that an extension of time is needed to investigate the grievance.  *Id.*

Defendants Davidsons and Miller argue that Plaintiff failed to exhaust his claims against them.  Defendant LaLonde argues that Plaintiff failed to exhaust his failure to protect claim against him.  Defendants Horton, Batho, Dunton, and Isard concede that Plaintiff exhausted his Eighth Amendment claims against them, and Defendants Isard and LaLonde concede that Plaintiff exhausted his retaliation claim against them.

Defendant Davidsons argues that Plaintiff failed to properly file a grievance alleging that Davidson failed to protect him.  Plaintiff submitted a Step I grievance URF 17-05-1343-28E on May 1, 2017, for conduct that occurred on March 20, 2017.  (ECF No. 19-2, PageID.132).  Plaintiff's grievance was rejected at Step I for being untimely and that rejection was upheld through Step III of the grievance process.  (PageID.129-133).  Plaintiff concedes in his response brief that his grievance was rejected and that the rejection was upheld through Step III of the grievance process.  In the opinion of the undersigned, because Plaintiff failed to properly exhaust his grievance remedies against Defendant Davidsons, Davidsons is entitled to dismissal without prejudice.

Defendant Miller argues that Plaintiff failed to name him in a Step I grievance.  Plaintiff filed grievance URF 17-04-1071-03B on April 1, 2017, concerning the denial of his request for protection on April 1, 2017.  (PageID.137).  Plaintiff explained that he was submitting the grievance "on the following three individuals, the Warden, Deputy Warden, and the RUM of

7

Steamboat." *Id*.    The Step I response states that Plaintiff was interviewed by the SCC on April 3, 2017 (two days after he filed this grievance), due to being guilty of DDO for refusing to go to general population.  No policy was violated by Assistant Deputy Warden Batho, or A/RUM Dunton.  (PageID.138).  At Step II, Plaintiff asserted that the he was denied protection by the SCC on January 19, 2017, and on March 20, 2017.  (PageID.135).

Plaintiff named Defendant J. Miller, acting Warden of Chippewa Correctional Facility, in his complaint.  After Plaintiff first requested protection he was interviewed by Defendants Miller and RUM LaLonde on January 20, 2017.  Plaintiff's request for protection was denied and Plaintiff was told by Defendant Miller to return to general population or he would receive a DDO ticket.  Plaintiff alleges that he filed a Step I grievance on April 1, 2017, against Defendant Miller and LaLonde. (URF 17-04-1071-03B).  Plaintiff's complaint does not identify that grievance.  Plaintiff asserts that he refused to attend the April 14, 2017, SCC meeting with Defendant Miller and Lalonde.  As a result, he was again reclassified to general population.  Plaintiff's April 1, 2017, grievance URF 17-04-1071-03B does not name Defendant Miller.  Plaintiff names the "Warden, Deputy Warden, and the RUM" for denying him protection on April 1, 2017.  Based on the Step I response, Assistant Deputy Warden Batho was considered the "Deputy Warden" that Plaintiff named in that grievance.   Plaintiff has not asserted an allegation in his complaint against Defendant Miller involving a denial of protection that occurred on April 1, 2017.  Plaintiff failed to give Defendant Miller fair notice in his Step I grievance that he was being grieved in URF 17-04-1071-03B.

Plaintiff did change the incident dates when he filed his Step II grievance to "1/19/17 and 3/20/17," but Plaintiff never named Defendant Miller in the Step II or Step III grievance.  Plaintiff never attempted to address the response he received at Step I concerning

8

Assistant Deputy Warden Batho or provide any facts or allegations which could put Defendant Miller on notice that Plaintiff really intended to grieve Defendant Miller in URF 17-04-1071-03B. The grievance reviewers did not have Plaintiff's complaint at the time that they reviewed the grievances. In the opinion of the undersigned, Plaintiff failed to properly exhaust his grievances against Defendant Miller.

Defendant LaLonde argues that Plaintiff failed to exhaust his Eighth Amendment claim against him. Defendant LaLonde concedes that Plaintiff exhausted his retaliation claim against him. URF 17-04-1071-03B failed to name Defendant LaLonde. Plaintiff argues that Defendant LaLonde is the RUM of Steamboat referred to in his Step I grievance. As explained above, the Step I grievance filed on April 1, 2017, references an incident date of April 1, 2017. In the Step I response Defendant Dunton was considered the RUM that Plaintiff named. Plaintiff made no attempt to name Defendant LaLonde. Plaintiff's complaint alleges that Defendant LaLonde was involved with Defendant Miller in denying him protection on January 20, 2017. Plaintiff asserts that Defendant LaLonde and Miller reclassified him to general population on April 14, 2017, after he failed to attend the SCC interview. For the reasons stated above, it is the opinion of the undersigned, that Plaintiff failed to properly exhaust his grievances against Defendant LaLonde.

Plaintiff argues that he sent an emergency grievance to the Director's Office in Lansing, Michigan naming Defendants Miller and LaLonde for denying him protection by retaliating against him. Plaintiff has attached a copy of that grievance as Exhibit 5 to his response brief. (ECF No. 20-1, PageID.166-168). The copy of the grievance that Plaintiff submitted to the court is not legible and Plaintiff fails to state what action was taken. In addition, Plaintiff has not

9

shown how submitting a grievance directly to the Director's Office satisfied his exhaustion remedies under PD 03.02.130.

For the foregoing reasons, I recommend that Defendants' partial motion for summary judgment (ECF No. 18) be granted dismissing Defendants Davidsons and Miller without prejudice and the failure to protect claim without prejudice against Defendant LaLonde. If the Court accepts this recommendation Defendants Horton, Isard, Batho, LaLonde, and Dunton shall remain in this case.

/s/ Timothy P. Greeley
TIMOTHY P. GREELEY
UNITED STATES MAGISTRATE JUDGE

Dated:   December 28, 2018

### NOTICE TO PARTIES

Any objections to this Report and Recommendation must be filed and served within fourteen days of service of this notice on you.  28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b).  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to file timely objections may constitute a waiver of any further right of appeal.  *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).