UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

ISSAC DECRAIS HARRIS #447304,                    Case No.   2:17-cv-00141

      Plaintiff,                               Hon.   Gordon J. Quist
                                                  U.S. District Judge

v.

C. HORTON, et al,

      Defendants.

_____/

**REPORT AND RECOMMENDATION**

## I.   Introduction

State prisoner Issac Decrais Harris filed this civil rights action pursuant to 42 U.S.C. § 1983 on August 25, 2017.   Harris says that while he was confined in the Chippewa Correctional Facility (URF) in 2017, he made multiple requests for protection from prison gang members who had threatened him.   Harris says that Defendants Warden C. Horton, Deputy Warden D. Isard, Deputy Warden J. Miller, Resident Unit Manager D. LaLonde, Resident Unit Manager K. Dunton, and Deputy Warden R. Batho denied his requests for protection.[1]   Harris says these denials violated his rights under the Eighth Amendment.

Harris claims that he was stabbed on March 20, 2017, while he was on the way to the chow hall.   He says this stabbing is evidence of the threats against him.   After

_____

[1]     On February 27, 2019, this Court entered in order dismissing Defendant Davidsons from this action due to Harris's failure to exhaust administrative remedies. (ECF No. 35.)

an investigation of this stabbing indicated that Harris was not stabbed, Harris was told to return to his unit.   When Harris refused this and subsequent orders, he was given misconduct tickets until his security level increased.   Harris says that Defendants unlawfully retaliated against him in violation of his rights under the First Amendment.

Defendants filed a motion for summary judgment (ECF No. 65).   Their primary arguments are that Harris has not shown (i) that he actually was threatened, (ii) that Defendants were aware of these threats, and (iii) that they were deliberately indifferent to it.   They also argue that their allegedly retaliatory actions – writing misconduct tickets on Harris for failing to obey direct orders – were not caused by some protected activity by Harris.   Harris responds that all Defendants knew he needed protection.   (ECF No. 68.)

The undersigned has reviewed the materials filed by the parties.   It is clear from the record that Harris feels threatened.   The Court is not unsympathetic to his concerns.   But it is also clear from the record that prison officials conducted multiple investigations of Harris's claims – including his claims regarding the alleged stabbing – and concluded that Harris was not stabbed and did not face a substantial risk of assault.   The evidence before the Court shows that Harris has not presented evidence creating a genuine issue of fact regarding this conclusion.   In addition, Harris's refusals to leave his segregation cell – in disobedience of direct orders – provide a legitimate basis for the misconduct tickets written against him.

Accordingly, I respectfully recommend that the Court grant the motion and dismiss this case.

## II.   Factual Allegations

While confined at URF, Harris says that he was placed in temporary segregation on January 19, 2017, after requesting protection from a prison gang. (ECF No. 1, PageID.5.)   The next day, Harris was interviewed by Security Classification Committee (SCC) members Defendants Miller and LaLonde.   (*Id*.) Harris says he was denied protection due to lack of evidence showing that he was threatened or in danger.   (*Id*.)   Harris was reclassified for release to "Level 2 East." (*Id*.)   Harris refused to go back to general population, explaining that he had been assaulted by members of the same prison gang in 2012 while he was housed in the Alger Correctional Facility.   (*Id*., PageID.5-6.)

Defendant Miller allegedly told Harris that he had no choice but to return to general population or he would receive a misconduct ticket for disobeying a direct order (DDO).   (*Id*., PageID.6.)   Harris obeyed an order later that day to return to general population.   Harris says that "Level 2 East" is the worst prison environment and is designed for gang members, security threat prisoners, and high assault risk prisoners. (*Id*.)

Harris says that he wrote two kites to Defendant Horton indicating that he should not have been denied protection.   (*Id*., PageID.7.)   Harris says that he received no response.   He also says he spoke to his assistant resident unit supervisor (ARUS) several times and explained that he should be in level 1.   (*Id*.)

Harris says that on March 20, 2017, he was stabbed while going to chow hall. Harris says that, after the stabbing, he entered the chow hall and sat next to a Corrections Officer (CO) on the "white side" and away from the "black side" of the chow hall. (*Id*.) After the prisoners on the "black side" of the chow left, he then went to the Control Center and told Sgt. Davidsons about the incident. (*Id*., PageID.8.) Harris says that Davidsons had CO Anderson investigate his allegation. Davidsons ordered Harris to return to his unit after the security camera footage was reviewed, which showed that Harris had not been stabbed and was never in distress. (*Id*., PageID.9.) After Harris refused to return to his unit, he was given a DDO misconduct ticket and placed in segregation. (*Id*.) Harris was found guilty of the misconduct after a hearing. The Class I Misconduct Hearing Report states in part:

---

**EVIDENCE/STATEMENTS IN ADDITION TO MISCONDUCT REPORT**

Unless otherwise noted all documents are one page. The prisoner is present and the misconduct report is reviewed with him along with his refusal of the hearings investigator and Misconduct Screening Form. Prisoner Harris states he was stabbed on Monday on the way to chow and he immediately reported it and does not know who stabbed him but needs protection from it happening again. The hearing is adjourned to ask (1) did Hatrris report he was stabbed (2) if yes when did he report it and when did he claim it happened (3) was any investigation done on the claim and what was the findings and why (3) was Harris seen by health care and did he have any injuries consistent with being stabbed (4) finally did Harris request protection and if yes please provide the request for protection and decision. The last day to hear the ticket is 3-29-17. ALJ O'Brien 3-24-17. The hearing is reconvened. The prisoner is present. Sgt Davidson's statement is reviewed that Harris reported to control center with a small abrasion on his left shoulder claiming he was stabbed between the two doors of Lime Unit on the way to chow and the camera was reviewed and he is seen exiting Lime acting normal and reporting to chow eating then going to control so it was determined he was not stabbed on the way to chow and Officer Anderson's statement that he did report he was stabbed on the way to chow. Prisoner Harris has nothing further to add. No further evidence is needed.

**REASONS FOR FINDINGS**

Prisoner is informed of the findings and sanction dates and told he will receive the report later.

REASONS FOR FINDINGS: Officer Anderson gave a direct and reasonable order to Prisoner Harris to return to his unit on 3-20-17 at 1740 hrs. Prisnoer Harris admits he heard and understood the order and did not comply. The order was capable of being performed, did not pose a significant risk of substantial harm and did not conflict with a prior order. Prisoner Harris statement that he was stabbed on the way to chow is not believed because if he was truly stabbed he would not have calmly walked to chow and ate before reporting it and would have immediately returned to the unit or went to control to report the stabbing. The Officer is clear and factual in his statement and is found to be credible. The charge is upheld.

---

(ECF No. 68-1, PageID.411.)

Harris says that on April 1, 2017, he filed a grievance naming Defendants Miller, LaLonde, and the Warden. (*Id*.) Harris alleges that on April 3, 2017,

Defendants Batho and Dunton conducted an SCC interview. (*Id.*, PageID.10.) Harris says that when he failed to identify his assailant, Defendants became angry and disbelieved his "story." (*Id.*) When Defendants told Harris he would be returned to "Level 2 East," he responded that he would not go back to the general population. (Id.)

On April 7, 2017, Harris received another DDO misconduct ticket when he refused an order to return to the general population. (*Id.*, PageID.11.) Harris refused to attend an April 14, 2017, SCC interview. (*Id.*) Harris says one of the Defendants (unidentified) came to his cell door and called him a derogatory name and told him he would be reclassified to Level 2 East for filing a grievance. (*Id.*) Harris filed another grievance on April 23, 2017, and he received another DDO misconduct ticket after again refusing to go general population. (*Id.*)

Harris was interviewed on May 1, 2017 by SCC members Isard and LaLonde. (*Id.*, PageID12.) Again, since Harris could not identify his attacker, he was told that he would be placed back into the general population and he would be reclassified from level 2 to level 4. (*Id.*, PageID.12-13.) Harris says that Defendant LaLonde stated "it is for your safety," and laughed at him. (*Id.*, PageID.13.) Harris refused to go to general population on May 8, 2017. As a result, he received another DDO misconduct ticket. (*Id.*)

Harris asserts that his First Amendment and Eighth Amendment rights were violated by Defendants. Harris asks for injunctive relief against the Defendants and placement in a safe prison environment. In addition, Harris requests compensatory

and punitive damages.

### III.   Summary Judgment Standard

Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Kocak v. Comty. Health Partners of Ohio, Inc.*, 400 F.3d 466, 468 (6th Cir. 2005). The standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  *State Farm Fire & Cas. Co. v. McGowan*, 421 F.3d 433, 436 (6th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)). The court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing the motion. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Twin City Fire Ins. Co. v. Adkins*, 400 F.3d 293, 296 (6th Cir. 2005).

### IV.   Analysis

#### 1.   Eighth Amendment failure to protect

Harris alleges that Defendants failed to protect him from an inmate assault, despite being aware of an actual threat of harm from prison gang members.   Harris says that he requested protection after he was threatened by gang members.   His request was denied because he could not substantiate his claim of a threat or identify any individual who had made a threat.

Under the Eighth Amendment, a prison official has a duty to protect an inmate

from violence caused by other prisoners.   *Wilson v. Sieter*, 501 U.S. 294, 303 (1991);

*Nelson v. Overberg*, 999 F.2d 162, 165 (6th Cir. 1993); *Walker v. Norris*, 917 F.2d

1449, 1453 (6th Cir. 1990); *Roland v. Johnson*, 856 F.2d 764 (6th Cir. 1988); *McGhee

v. Foltz*, 852 F.2d 876, 880-81 (6th Cir. 1988).   "A prison official's 'deliberate

indifference' to a substantial risk of serious harm to an inmate violates the Eighth

Amendment."   *Farmer v. Brennan*, 511 U.S. 825, 828 (1994) (citations omitted).

Recognizing that a prison official has an obligation to protect an inmate from assault

by another inmate, the Supreme Court defined deliberate indifference as requiring a

showing that the prison official consciously disregarded a substantial risk of serious

harm to plaintiff.   *Id.* at 839.   The court stated:

> We hold instead that a prison official cannot be found liable under the
> Eighth Amendment for denying an inmate humane conditions of
> confinement unless the official knows of and disregards an excessive risk
> to inmate health or safety; the official must both be aware of facts from
> which the inference could be drawn that a substantial risk of serious
> harm exists, and he must also draw the inference. . . .   But an official's
> failure to alleviate a significant risk that he should have perceived but
> did not, while no cause for commendation, cannot under our cases be
> condemned as infliction of punishment.

*Id.* at 837.   Thus, in order to support a claim that a prison official failed to protect

plaintiff, two conditions must be satisfied:   (1) the inmate must show that a

substantial risk of harm was present and (2) that the defendants, having knowledge

of that risk, possessed a culpable state of mind. *Id.*

In order to support an Eighth Amendment claim, Harris must establish

"something more than a lack of ordinary due care, inadvertence, or error; the conduct

must instead be 'obdurate' or 'wanton'--exhibiting recklessness or callous neglect." *Id.* at 165.   *See also Gibson v. Foltz*, 963 F.2d 851, 853 (6th Cir. 1992); *Walker v. Norris*, 917 F.2d 1449 (6th Cir. 1990); *McGhee v. Foltz*, 852 F.2d 876, 881 (6th Cir. 1988).   An error of judgment does not subject a prison official to liability.   *Jeffers v. Heavrin*, 10 F.3d 380, 381 (6th Cir. 1993) (errors of judgment are shielded by qualified immunity); *Marsh v. Arn*, 937 F.2d at 1069.

In *Stewart v. Love*, 696 F.2d 43 (6th Cir. 1982), the Sixth Circuit affirmed the dismissal of a prisoner's complaint that prison officials failed to protect him.   In that case, prison officials transferred plaintiff for a period of six months to another prison cell after plaintiff informed the officials that he feared for his safety.   Plaintiff was then transferred back to his original cell.   Plaintiff informed his counselor that he feared for his safety, because he had heard rumors regarding a planned attack.   The court noted that plaintiff made only general allegations that someone was going to hit him on the head.   Plaintiff was subsequently assaulted.   In dismissing the claim, the court found that defendants were not deliberately indifferent to a known risk of harm to plaintiff and concluded that defendants, at most, were guilty of mere negligence which failed to rise to the level of an Eighth Amendment violation.

In January 2017 (well before the alleged stabbing on March 20), Harris was placed into temporary protective custody after he informed officers that a threat had been made.   Defendants Miller and LaLonde conducted an SCC interview and investigation.   They determined that Harris could not support his claim.   The

Request For Protection/Investigation Report provided reasons for the denial of
Harris's request for protection.   The Report is shown below.

**REASON PROTECTION IS BEING REQUESTED**

(Include who made the request and the circumstances or claims relating to the request; attach extra pages if necessary.)

Prisoner Harris came up to the Annex and stated he did not feel safe in GP.  He stated that he had been approached by Bloods at URF on 01/18/17 who said they had been told to "keep a look out" for him.  Harris says he could not identify the prisoners that approached him.  Harris states that when he was at LMF in 2012 he was walking with "Twin" (Burris 675593 STG II Blood) when Burris got into an altercation.  Harris says he didn't assist Burris and the Bloods have been after him since then. Prisoner statement attached.

| Reporting Staff Name & Title: | Signature: | Date: |
|---|---|---|
| Sgt. Bernhardt | SGT [signature] | 1/19/17 |

**INVESTIGATION INFORMATION**

Prior protection requests and placements, including in protective segregation: Per IMS notes - Transfer from KCF on 01/18/18 with transfer order indicating reason for transfer being PC granted.

Additional Information: Prisoner claims he was stabbed at KCF and that was the reason for the PC request and transfer.

Investigation Narrative: (Attach extra pages if necessary.)

Burris 675593 is the head of the Villain Mafia Blood set. Burris and Harris were both at LMF in 2012.  Harris was very vague when asked when the Blood prisoners approached him on 01/18/17.  He would only say he was called outside "later in the day."  As a result it was not possible to attempt to verify his version of events with the facility cameras.  He did not have an answer for why he waited until the next day to request protection or why he stayed out on the yard for hours after being approached as he admits to doing.

| Investigator Name & Title: | Signature: | Date: |
|---|---|---|
| Sgt. Bernhardt | SGT [signature] | 1/19/17 |

**Note:** Forward to Deputy Warden for SCC review when above is completed.

**SCC REVIEW AND DECISION**

(Include rationale for decision.  If transfer to general population at another facility is recommended, include why it is believed protection needs cannot be met at current facility.)

THERE IS NO EVIDENCE THAT PRISONER HAS BEEN THREATENED OR THAT HIS SAFETY IS IN JEOPARDY AT URF. PC REQUEST DENIED. RELEASE LEVEL II - EAST

| SCC Staff Name & Title: | Signature: | Date: |
|---|---|---|
| J. Miller   A/DW | [signature] | 1/20/17 |
| P. LaCapp   RUM | [signature] | 1/20/17 |

(ECF No. 3-1, PageID.37.)

In the opinion of the undersigned, Harris cannot show that his Eighth Amendment rights were denied on January 20, 2017, when Defendants Miller and LaLonde denied his initial request for protection.   The evidence in this case does not create a genuine issue of material fact regarding whether Miller and LaLonde consciously disregarded a substantial risk of serious harm to Harris.   Instead, the record shows that Miller and LaLonde investigated Harris's request for protection and concluded that Harris could not substantiate his claim that a threat was made or that he needed protection.   Miller and LaLonde could not verify his claim because Harris was vague.   These investigative efforts were documents, as shown above.   In addition, in the report, Miller and LaLonde pointed to the facts showing that Harris failed to report the alleged incident until the next day, which prevented review of video, and stayed out on the yard even after he allegedly received the threat.   As noted above, a prison official has a duty to protect an inmate from violence caused by other prisoners.   Here, the objective and undisputed evidence shows that Miller and LaLonde conducted an investigation and came to the reasonable conclusion that Harris's safety was not at risk.   In the opinion of the undersigned, the facts fail to show that Miller and LaLonde acted with deliberate indifference to a substantial risk of harm to Harris in January 2017.

After the alleged May 20, 2017 stabbing incident, Harris says he was again denied protection in violation of his Eighth Amendment rights.   The alleged stabbing incident occurred before Harris arrived at chow hall.   Nevertheless, Harris went to chow hall and sat down and ate his meal, then went to the Control Room and

requested protection from Sgt. Davidsons because he had been stabbed.   Harris says

that Davidsons had another officer review the surveillance video, which confirmed

that Harris had not been stabbed.   (ECF No. 1, PageID.9.)   Harris refused to return

to his unit and was given a DDO misconduct and placed in segregation.

The next morning, Harris was examined by a nurse and was treated for a

"superficial injury to skin."   The medical records states:

Officer call HC inmate c/o cut on shoulder.  I was walking and got stuck with something

**Objective:**
Wound Location: left shoulder.

Examination shows superficial injury to skin;

Signs  & symptoms of infection: No evidence of infection.

Date of last tetanus booster: 06/07/2011

inmate amb to unit HC with no assist gait steady A&O x3 speech clear & appropriate, lungs CTA no respiratory distress, small scrap to L shoulder no other injurys noted, continue SOAP

**Assessment:**
Alteration in skin integrity.
Related to: laceration/abrasion,

**Plan:**
**ORDERS**

| Status | Order | Reason | Date |
|---|---|---|---|
| completed | Affected area cleansed with mild antiseptic/soap and water | | |
| completed | Sick call if symptoms do not subside or become more severe | | |
| completed | Patient education provided | | |

(ECF No. 66-4, PageID.389.)

**Subjective:**
no ( when asked any other injurys)

**Objective:**
Nurse Protocol Continues:   O: inmate able flex/extend/rotate shoulder.

**Assessment:**
alt in skin integrety r/t cut

**Plan:**
Area cleansed with NS, tripile antibiotic oint. & bandaid applied and supply given, inmate educated to keep area clean & dry, inmate understood education and agrees with HC plan.

(*Id.*, PageID.399.)

In his deposition, Harris explained that he could not identify the individual who stabbed him, but he could recognize him again if he saw him.   Harris stated:

> **Defense Counsel**: Yes, when you were reporting it to Davidsons and you told him that you had been stabbed, what facts besides the fact that here is the injury did you tell him? You didn't give him a name of the person who did it, just that you knew it was gang related; is that correct?
>
> **Harris**. Yes, I told him it was a gang, I'm talking about but I told him that, I'm talking about, I ain't know who stabbed me.
>
> **Defense Counsel**. And I know I've said it a couple of times, but you don't know the name of the person who stabbed you?
>
> **Harris**. Uh-huh.
>
> **Defense Counsel**. But you were confident they were a gang member because you saw their face and if you saw them again you could point them out?
>
> **Harris**. Yup.
>
> **Defense Counsel**.   Why didn't you tell any of those facts to Mr. Davidsons so that he could have you point him out so that you could have a SPON issued to keep you away from somebody who just attacked you?
>
> **Harris**. Because honestly, I'm talking about, the video showed everything. If they was really, I'm talking about, doing a proper investigation, I'm talking about, the video showed  it.

(ECF No. 66-3, PageID.386.)

Harris continued to receive DDO misconduct tickets while he remained in segregation for refusing to return to general population. While in segregation, Harris could not identify his attacker and Defendants were unable to verify that he had been attacked or that a threat had been made against him.

In the opinion of the undersigned, Harris has not established that a genuine issue of material fact exists relating to Defendants' responses to Harris's request for protection. Harris could not identify his attacker and made only vague allegations regarding the alleged threat to his safety. In addition, his conduct was suspicious. Harris initially said that he was threatened on the yard, but he remained on the yard, and waited a day until he reported the threat. Similarly, after he says that he was stabbed, he went to the chow hall and sat down with his meal next to a corrections officer to whom he failed to report the incident at that time. Then, after meal service had ended, he went to the Control Room and reported, but he could not identify his attacker. In addition, Defendants could not verify that a stabbing had occurred and the medical record shows that he had only a superficial skin injury and was given a bandaid. At best, like the plaintiff in *Stewart*, Harris may establish that Defendants were negligent, but Harris has not adduced evidence showing that any Defendant was consciously aware of a serious threat to Harris and acted with deliberate indifference to that threat. In the opinion of the undersigned, Defendants are entitled to dismissal on the Eighth Amendment claims.

**2. Retaliation**

Harris claims that Defendants retaliated against him after he filed a grievance by continuing to issue him DDO misconduct tickets when he refused to return to general population. This caused his security level to increase from a level 2 to a level 4. Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to support a First Amendment retaliation claim, a plaintiff must establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)). "If the defendant can show that he would have taken the same actin in absence of protected activity, he is entitled to prevail on summary judgment." *Thaddeus-X*, 175 F.3d at 399.

According to Harris's complaint, he was denied protective custody after the alleged stabbing and given a DDO misconduct ticket for refusing to return to his cell. (ECF No. 1, PageID.9.) He received this misconduct ticket **before** he filed his first relevant grievance on April 1. (*Id.*) After he filed a grievance, Defendants continued to deny him protective custody and continued to issue him DDO

misconduct tickets for refusing to return to his general population unit.    For

example, Harris was found guilty of a DDO misconduct ticket on April 28, 2017:

**Disobeying A Direct Order**

| If Charge Changed by Hearing Officer | Plea |
|---|---|
| | ☐ Guilty    ☒ Not Guilty |

| | | No Hearing Investigation Requested |
|---|---|---|
| Misconduct Report Read to and Discussed with Prisoner | ☐ (check if applies) | ☐ (check if applies) |
| Hearing Investigation Read to and Discussed with Prisoner | ☐ (check if applies) | |

**EVIDENCE/STATEMENTS IN ADDITION TO MISCONDUCT REPORT**

Prisoner is  not present for the hearing and  when asked if he wanted to the hearing at 0933 hrs by officer Ortiz  stated, no.. Prisoners non-appearance is demeed a waiver of his right to appear and a plea of not guilty is entered on his behalf.  The misconduct report is reviewed with a   refusal 1 page,  and a screening form 1 page.    No further evidence is requested or is necessary.

54
ENTE

**REASONS FOR FINDINGS**

    Pursuant to PD  03.03.105 B  Disobeying A Direct Order:  Refusal or failure to follow a valid and reasonable order of an employee.    Prisoner  Harris  was given a direct and reasonable order on 4-23-17 at 0615 hrs by the reporting officer to pack up to go to G.P. today.    Prisoner Harris  heard and understood the order because he stated, no.      Prisoner Harris voluntarily failed to follow the order and did not pack up to go to G.P.     The order is not unreasonable because compliance with the order  would not have created a significant  risk of  serious harm to the prisoners physical well being, the order did not conflict with a previous order given to the prisoner and he is physically able to comply with said order..
The reporting officer is clear and detailed in his statements and found credible.  The charge is upheld.

(ECF No. 66-6, PageID.394.)   As a result of the misconduct, Harris was reclassified

and increased to a security Level IV.   (*Id.*, PageID.392.)

        In the opinion of the undersigned, Harris's retaliation claim fails.    Defendants

denied the request for protection **before** Harris filed a grievance.    They continued

to take the same action after he filed a grievance and denied his requests for

protection due to the vagueness of his claims, his inability to identify the individuals

who threatened and attacked him, and his actions before and after the alleged attack.

Defendants were unable to confirm Harris's claims.    As a result, he was denied

protection and ordered to return to general population.    Each time that he refused

he was given a DDO misconduct ticket until his security level increased.    Harris has

failed to show that the conduct of any Defendant was retaliatory.[2]

## V.    Recommendation

As mentioned in the introduction, the Court is not unsympathetic to Harris's

concerns.    But it is clear from the record that prison officials conducted multiple

investigations of Harris's claims and concluded that Harris was not stabbed and did

not face a substantial risk of assault.    Accordingly, they ordered him to return to his

cell and issued DDO tickets to him when he failed to do so.    Harris has not presented

evidence showing that a genuine issue of material fact remains in this case.    Thus,

the undersigned respectfully recommends that the Court grant Defendants' motion

for summary judgment and dismiss this case.[3]

---

[2]    Alternatively, Defendants move for the qualified immunity. Government officials, performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.    *Dietrich v. Burrows*, 167 F.3d 1007, 1012 (6th Cir. 1999); *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).    An "objective reasonableness" test is used to determine whether the official could reasonably have believed his conduct was lawful.    *Dietrich*, 167 F.3d at 1012; *Anderson v. Creighton*, 483 U.S. 635, 641 (1987).    "Qualified immunity balances two important interests – the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably."    *Pearson v. Callahan*, 555 U.S. 223, 231 (2009).    In making a qualified immunity determination, the court must decide whether the facts as alleged or shown make out a constitutional violation or whether the right that was allegedly violated was a clearly established right at the time of the alleged misconduct.    *Id.* at 232-233.    If the court can conclude that either no constitutional violation occurred or that the right was not clearly established, qualified immunity is warranted.    The court may consider either approach without regard to sequence.    *Id.*    In the opinion of the undersigned, Defendants are entitled to the defense of qualified immunity because Harris cannot support his claims.

[3]    To the extent that Plaintiff is suing the individual Defendants in their official

---

capacities, such claims are barred by the Eleventh Amendment.  *See Will v.  Michigan Department of State Police*, 491 U.S. 58 (1989) (claims against a state agency or an official in his/her official capacity are claims against the state, and are not claims against a "person" subject to Section 1983 liability); *Frederick v.  Abramajtys*, No. 94-1935, 1995 WL 564321, \*\*1 (6th Cir. Sept. 21, 1995) (unpublished).

NOTICE TO PARTIES:   Objections to this Report and Recommendation must be served on opposing parties and filed with the Clerk of the Court within fourteen (14) days of receipt of this Report and Recommendation.   28 U.S.C. ' 636(b)(1)(C); Fed. R. Civ. P. 72(b); W.D. Mich. LCivR 72.3(b).   Failure to file timely objections constitutes a waiver of any further right to appeal.   *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).   *See also Thomas v. Arn*, 474 U.S. 140 (1985).

Dated:    February 11, 2020                          /s/ *Maarten Vermaat*
                                                     MAARTEN VERMAAT
                                                     U.S. MAGISTRATE JUDGE